**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DONTE COUCH,** | : |
| | : |
| **Plaintiff** | **CIVIL ACTION NO. 3:14-2232** |
| | : |
| **v** | |
| | :   **(JUDGE MANNION)** |
| **BRENDA L. TRITT,** *et al.,* | |
| | : |
| **Defendants** | |

**MEMORANDUM**

## I. Background

Donte Couch, an inmate confined in the State Correctional Institution, Frackville, Pennsylvania ("SCI-Frackville"), filed this pro se civil rights action pursuant to 42 U.S.C. §1983. On February 5, 2015, Plaintiff filed an amended complaint. (Doc. 11). The named Defendants are the following SCI-Frackville employees: Facility Manager Brenda Tritt; Deputy Facility Managers G. Miller and Anthony Kovalchik; and Unit Manager James Weissinger. Id.

Plaintiff alleges that on July 2, 2014, he was transferred from SCI-Camp Hill to SCI-Frackville and placed in a cell with inmate, John Dwyer. Id. Plaintiff states that "minutes after entering the cell, Dwyer, without forewarning or provocation, physically attached Plaintiff." Id. Plaintiff "attempted to defend himself, but was overwhelmed by inmate Dwyer." Id. He claims that the

assault "continued until an officer making rounds intervened." Id. After being placed in handcuffs, Plaintiff was taken to the infirmary and Dwyer was taken to the Disciplinary Housing Unit ("RHU"). Plaintiff was subsequently returned to his previously assigned cell. Id.

Plaintiff states that over the next few days he "learned that inmate Dwyer suffers from serious mental disorders which necessitated the program assignment Z-Code (single cell housing)). Id. Plaintiff claims that he also learned that inmate Dwyer was placed in Administrative Custody twice before "for fear he posed a danger to himself and others", and that Defendants Weissinger, Miller, Kovalchik and Tritt "removed Dwyer's Z-Code status although mental health officials made clear he presented a danger." Id.

Plaintiff filed the instant action in which he seeks compensatory and punitive damages for Defendants' failure to protect Plaintiff from being assaulted by his cellmate. Id.

Presently before the Court is Defendants' motion for summary judgment in which Defendants argue that Couch has failed to exhaust available administrative remedies. (Doc. 18). The motion is fully briefed, and is ripe for disposition. For the reasons set forth below, the Defendants' motion for summary judgment will be denied.

## II. **Standard of Review**

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment " . . . forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the

3

nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56(c) of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56(e)[1] to go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to

---

[1]Couch was provided with copies of M.D. Pa. Local Rules 7.1 through 7.8, Local Rule 26.10, and Federal Rule of Civil Procedure 56(e).  In relevant part, Rule 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Local Rule 7.4 provides in relevant part:

> All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

(See Doc. 3, Standing Practice Order).

demonstrate specific material facts which give rise to a genuine issue. Celotex Corporation v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56(e) shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. See Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

## III. <u>Statement of Facts</u>

From the pleadings, declarations and exhibits submitted therewith, the following facts can be ascertained as undisputed.[2]

---

[2]In support of their motion for summary judgment, Defendants submit a statement of material facts, supported by evidentiary materials. (See Doc. 19). Couch did not submit a statement of material facts or any affidavits, declarations under penalty of perjury or other appropriate evidentiary materials contravening the Defendants' submission. It is clear that a plaintiff opposing a motion for summary judgment cannot rely on the mere allegations set forth in his complaint. Couch was specifically advised by the Standard Practice Order issued in this case that he could not rest upon the mere allegations of his complaint, but was required to set forth, by way of affidavits or other appropriate evidentiary materials, specific facts showing that there is a genuine issue for trial.

On July 17, 2014, Plaintiff filed Grievance No. 518978, in which he states the following:

> On July 2, 2014, upon arriving at this institution, I was sent to C-Block for permanent housing assignment. When I arrived at C-Block I was assigned to C8-18, with inmate John Dwyer. After only 2 minutes of being in the cell, I was physically assaulted by Mr. Dwyer resulting in permanent injuries. I had never met Mr. Dwyer in my life nor had any previous problems with him. In fact, I had only been in this institution approximately 20 minutes before being assaulted. I later learned that I was the victim of this administration's decision to double-cell Mr. Dwyer although he suffers from mental illnesses. No one informed me of that prior to being placed in the cell with him nor that he made it clear he would react adversely to being double-celled. The failures on part of the DOC caused me physical and psychological pain. As such, I request monetary compensation to later be determined.

(Doc. 19-3 at 40, Official Inmate Grievance).

On July 31, 2014, Plaintiff's grievance was denied as follows:

> Investigation revealed that there is no evidence to support your allegations. Inmate Dwyer is responsible for his own actions. Staff did not knowingly place you into an unsafe cell. A review of your medical file revealed that you did not receive "permanent injuries" as you allege. It is unfortunate that inmate Dwyer assaulted you for his own personal agenda. However, it appears that you are attempting to capitalize on an unfortunate incident.
>
> Be advised, as per the inmate Grievance System (DC-ADM 804) page 13, #12, you may be disciplined if you misuse the grievance system or fabricate facts in your grievance.
>
> No further action is required.

(Doc. 19-3 at 42, Initial Review Response).

On August 8, 2014, Plaintiff filed an appeal of the denial of Grievance

No. 518978 to Facility Manager Brenda Tritt, stating the following:

> This appeal is from the initial response to grievance 518978. The initial grievance was found to be frivolous by the Grievance Officer, Captain of Security, S.M. Downs. The facts giving rise to the complaint is as follows.

> Immediately upon my arrival here, I was sent to C-Unit and assigned to 18 cell with an inmate named John Dwyer. Shortly thereafter, I was physically assaulted by Mr. Dwyer resulting in permanent injuries. I later learned that this administration decided to remove his Z-code thereby allowing him to be double-celled. I was never informed that this inmate was previously single celled not that he was mentally unstable. Had I been made aware of those facts I would have refused placement in such a dangerous situation. As it turned out, the failure to abate an obvious risk of harm caused me to become the victim of an unprovoked assault.

> The Grievance Officer states there is no evidence to support my allegations but the facts speak for themselves. First, the decision to place me in a cell with an inmate whom at some point was deemed unfit for cell-mates was a decision staff knowingly made. Second, I have received information from personal friends of Mr. Dwyer indicating he was twice placed in the RHU because staff believed him too dangerous to be double-celled. Third, the Grievance Officer claimed I did not receive permanent injuries is belied by the permanent scars I now have on my forehead and chin. Scars which were photographed by the security team immediately after I was assaulted. And, if the words of the Security Captain are true, he clearly violated my privacy rights in reviewing my personal medical files in his attempts to avoid liability.

> The last exception is the manner in which the grievance was handled in this instance. As a preliminary matter, my complaints centered on actions of the two Deputies and Facility Manager. Why the Security Captain was assigned the Grievance Officer is extremely questionable. Given he is out-ranked by all parties what possible resolution could he provide? It does appear, however, his primary goal is to bully me from pursuing this issue. His veiled

threats made that fact abundantly clear. Although I agree that inmate Dwyer is responsible for his own actions, that principle applies with equal force to those responsible for making his actions possible. In other words, if not for the actions of the administrative body of this institution I would have never been assaulted. Threats levied by Captain Downs does not negate that fact. The tactics employed in the initial response of victimizing the victim did nothing to solve the problem. As such, I respectfully request monetary compensation for the pain and injuries suffered.

(Doc. 19-3 at 43-44, Appeal).

By response dated August 14, 2014, Facility Manager Tritt upheld the

Grievance Officer's denial of Grievance No. 518978, finding the following:

Your appeal has been received and reviewed as well as all relevant information.

You contend that you were put in harms way by celling you with inmate Dwyer who assaulted you.

As the initial response indicates, staff did not knowingly put you in harms way. Unit Staff indicate that Inmate Dwyer had indicated he was ready for a cellie. Cell fights do occur, but they are not predictable in nature. If you have anyone to blame, it is inmate Dwyer. Initial response is inclusive on all other aspects. As no major medical issues were indicated, monetary damages are deemed unwarranted.

Initial Response is upheld.

(Doc. 19-3 at 45, Facility Manager's Appeal Response).

On August 28, 2014, Couch filed an appeal to Final Review from the

denial of Grievance No. 518978, in which he restated the claims raised in his

appeal to the Facility Manager, as well as the following claims:

On appeal to the Facility Manager the issues of responsibility was again shifted to Dwyer. The issues relating to staff's decision to removed Dwyer's Z-Code and the threat levied by the Security Captain went completely unaddressed. The Facility Manager stated that Unit Staff indicated that Dwyer indicated he was ready for a cellie and if anyone was to blame it is Inmate Dwyer. The question left unanswered is how was Dwyer able to assault me? He did not request removal of his Z-Code but continually objected to it. He did not request or pick a cellie despite given the opportunity to do so. That being said, the assault by Mr. Dwyer was the culmination of decisions beginning with staff. While Dwyer is now in the RHU for his part, all other responsible parties remain unpunished. On the issue of responsibility, it was their decision which caused me to be physically assaulted after being in this institution a mere 20 minutes.

Lastly, in a troubling statement the Facility Manager noted that cell fights do occur but they are not "predictable in nature." Even an inexperienced prison administrator would know that forcing someone to take a cellie is an incident waiting to happen. Although cell fights do occur this was no cell fight but an all-out assault. It was not only predictable; it was inevitable. If the administration did not know, they should have. The Facility Manager and staff are playing Russian Roulette with the Z-Codes of mental health patients and I was an innocent victim. I was fortunate to escape with my life but what will be the excuse when someone is raped or killed? For the assault I suffered I ask that responsibility be imported to all involved and not just to the expendable inmate. Therefore, I reiterate my request for monetary damages for the scars I will forever wear on my face.

(Doc. 19-3 at 46-47, Appeal to Final Review).

On October 8, 2014, Plaintiff's appeal to Final Review was denied,

based on the following:

You state that upon arrival at SCI-Frackville you were placed into a cell with another inmate. You state that within minutes of entering the cell, you were physically assaulted by your cellmate

9

which resulted in permanent injuries. You state that you learned that you were the victim of the administration's decision to double-cell an inmate with mental illnesses. You state that you were not informed of this information prior to you being placed into the cell. Your concerns have been reviewed. Review of the record indicates that no evidence was found to suggest that you were knowingly placed into an unsafe cell. As explained to you, unfortunately, cell fights do occur; however, they are not predictable. You provide no information/evidence to suggest that staff knowingly placed you in harm's way. The responses provided to you are accurate. Therefore, your grievance appeal to this office is denied as well as your request for relief.

(Doc. 19-3 at 48, Final Appeal Decision).

## IV.  **Discussion**

The Pennsylvania Department of Corrections ("DOC") has an Inmate Grievance System which permits any inmate to seek review of problems that may arise during the course of confinement. 37 Pa.Code § 93.9(a); see also www.cor.state.pa.us, DOC Policies, Policy No. DC-ADM 804, Inmate Grievance System. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the Facility's Grievance Coordinator for initial review. This must occur within fifteen days after the events upon which the claims are based. Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. Thereafter, within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary"s Office of Inmate Grievances and Appeals. See Booth v. Churner, 206 F.3d 289, 293

n. 2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process).

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action. See 42 U.S.C. §1997e(a); Booth v. Churner, 532 U.S. 731, 741 (2001). The exhaustion requirement is mandatory, see Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth, 532 U.S. at 741 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000) (same), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Courts have also imposed a procedural default component on the exhaustion requirement, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court. See Spruill, 372 F.3d 218. An "untimely or

otherwise procedurally defective administrative grievance" does not satisfy the PLRA's exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 83-84 (2006). "'[P]rison grievance procedures supply the yardstick' for determining what steps are required for exhaustion [under §1997e(a) ]." Spruill, 372 F.3d at 231; see Jones v. Bock, 549 U.S. 199, 218 (2007) ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

Here, Defendants do not contest that Couch "exhausted his administrative remedies in the literal sense"; he pursued his grievance through Pennsylvania's Inmate Grievance System until there were no "further avenues of relief ... available to him" within that system. Spruill, 372 F.3d at 232. Their dispute centers instead on the procedural default component of the PLRA's exhaustion requirement. Specifically, Defendants assert that Couch procedurally defaulted his claims against them by failing to identify them by name in his grievance.[3] The Court finds, however, that this argument was partially rejected by the Supreme Court in Jones, 549 U.S. 199:

> The Sixth Circuit requires that a prisoner have identified, in the first step of the grievance process, each individual later named in the lawsuit to properly exhaust administrative remedies. Burton v. Jones, 321 F.3d 569, 575 (2003). Other Circuits have taken varying approaches to this question ..., none going as far as the

---

[3]Pursuant to DC-ADM 804, Section 1 - Grievances & Initial Review at 12(b), the inmate shall identify individuals directly involved in the event(s).

Sixth Circuit in requiring in every case that the defendants have been named from the beginning of the grievance process.

...

The [Prison Litigation Reform Act] requires exhaustion of "such administrative remedies as are available," 42 U.S.C. §1997e(a), but nothing in the statute imposes a "name all defendants" requirement along the lines of the Sixth Circuit's judicially created rule....

...

We have identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record.... The Sixth Circuit rule may promote early notice to those who might later be sued, but that has not been thought to be one of the leading purposes of the exhaustion requirement.... We do not determine whether the grievances filed by petitioners satisfied the requirement of "proper exhaustion," ... but simply conclude that exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances.

Id. at 205, 217–19.

In other words, the particularity of the administrative complaint is judged only by the prison grievance process itself, which will vary from system to system and claim to claim. Id. at 218; see also Moore v. Bennette, 517 F.3d 717, 726 (4th Cir.2008) (vacating a lower court's decision to dismiss a claim for failing to "identify specific individuals in his grievances" where the grievance policy did "not require identification of the persons responsible for the challenged conduct"). Because "early notice to those who might later be

sued ... has not been thought to be one of the leading purposes of the exhaustion requirement," the named defendants in the administrative complaint have no bearing on the sufficiency of the district court complaint, as long as the administrative complaint was proper in its own right. Jones, 549 U.S. at 201.

However, even where there was no ambiguity as to the inmate grievance system, other courts, including the United States Court of Appeals for the Third Circuit, which have examined this issue in light of Jones, have found for the Plaintiff. In Williams v. Beard, 482 F.3d 637 (3rd Cir.2007), for instance, the Pennsylvania Inmate Grievance System Policy required that the inmate "include a statement of the facts relevant to the claim [and] identify any persons who may have information that could be helpful in resolving the grievance...." Id. at fn.2. After exhausting his administrative remedies, the Williams plaintiff filed a complaint in the district court, alleging §1983 claims against a Mr. "Hollibaugh" and other prison officials. Id. at 639. The district court held that because the plaintiff did not name Mr. Hollibaugh in his initial grievance, procedural default warranted a grant of summary judgment against the plaintiff. Id. On appeal, the plaintiff conceded that his grievance was technically noncompliant when he failed to name Mr. Hollibaugh in his initial grievance. Id. The Third Circuit reversed the lower court's opinion, holding

14

that all that is necessary to defeat a procedural default is that the prison is able from the initial grievance to "identify the unidentified persons and acknowledg[e] that they were fairly within the compass of the prisoner's grievance." Id. at 640 (quoting Spruill v. Gillis, 372 F.3d 218, 234 (3rd Cir.2004)); see also Robinson v. Johnson, 343 Fed.Appx. 778 (3rd Cir.2009) (reversing the grant of summary judgment and finding that even if Robinson had procedurally defaulted his claims against Defendants by failing to identify them in his grievance, the prison's grievance process excused those procedural defaults); Goebert v. Lee County, 510 F.3d 1312, 1324–25 (11th Cir.2007) (it is not necessary that an official prison grievance be used); Pineda–Morales v. De Rosa, No. 3–4297, 2005 WL 1607276, at *5 (D . N.J. July 6, 2005) (naming "chaplain staff" was sufficient).

The Plaintiff in the instant action is an inmate who alleges to have been assaulted within the first twenty minutes of his arrival at SCI-Frackville. Although unable to identify the exact person or persons responsible for his placement in a cell with an assaultive inmate, Plaintiff's grievance, more than adequately, comports with the reasoning in Jones that "the primary purpose of the grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." Williams, 482 F.3d at 640 (quoting Jones, 549 U.S. at 219). Based on the facts provided in

Plaintiff's grievance, the prison was able to conduct an investigation of certain staff and determine in their initial review response that "[s]taff did not knowingly place you into an unsafe cell". Such a conclusion indicates that the prison was able, from the initial grievance, to "identify the unidentified persons and acknowledg[e] that they were fairly within the compass of the prisoner's grievance." Spruill, 372 F.3d at 234. Plaintiff further narrowed the identities of the Defendants in his appeal to the Facility Manager, when he indicated that "[a]s a preliminary matter, my complaints centered on actions of the two Deputies and Facility Manager". Thus, considering the precedent on the issue and the requirement that we construe a pro se plaintiff's pleadings liberally, the Court concludes that Plaintiff's grievance statement gave fair notice of his §1983 claims, and his claim may therefore proceed.[4]

---

[4]To the extent that Defendants rely on Chief Judge Conner's decision in McClintic v. Bickell, No.1:14-CV-2005, 2015 WL 4207229, *3 (M.D. Pa. July 10, 2015), for support that Defendants are entitled to summary judgment, the Court finds such reliance misplaced. In McClintic, the inmate plaintiff's grievance was rejected at all stages of the administrative exhaustion procedure as untimely and for exceeding the two-page limit. In granting defendants' motion for summary judgment based on the procedural default component of the exhaustion requirement that requires inmates to fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court, Chief Judge Conner noted the additional defect of plaintiff's failure to identify three of the ten named defendants in his grievance. Id. at *5. The Court finds McClintic factually distinguishable in that McClintic's procedural defaults prevented the merits of his grievance from being addressed, which, in turn, prevented the opportunity, such as Couch's grievance had, to succeed in "evidence[ing] knowledge on the part of prison officials ... that there was a problem" Williams, 482 F.3d at 640, and

## V.    CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment is

denied. An appropriate order shall follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**Dated:** January 22, 2016
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-2232-01.wpd

---

acknowledging that the relevant parties were "fairly within the compass" of Plaintiff's grievance. Spruill, 372 F.3d at 234.